UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD A. WARREN, individually and on behalf of those similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>OASIS LIFESTYLE LLC,<br><br>Defendant | )<br>)<br>) **CLASS ACTION COMPLAINT**<br>)<br>) **FLSA COLLECTIVE ACTION**<br>) **COMPLAINT UNDER**<br>) **29 USC § 216(b)**<br>)<br>)<br>) CASE NO.  3:20-cv-48<br>)<br>)<br>)<br>) |

***PLAINTIFF'S CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES***

Comes now Plaintiff Richard A. Warren ("Warren"), individually and on behalf of all similarly situated persons, by counsel, and for his Class Action and FLSA Collective Action Complaint for Damages against the Defendant Oasis Lifestyle LLC ("Oasis"), alleges and says:

### *I. STATEMENT OF THE CASE*

Warren brings this class and collective action lawsuit against Oasis to address class-wide wage and hour violations committed by Oasis against its hourly-paid employees who are required by Oasis and by law to wear significant Personal Protective Equipment ("PPE") while working.  Warren will serve as class representative for the group of current and former Oasis employees who were victims of Oasis' class-wide wage violations.

Specifically, Oasis is and has been taking illegal wage deductions from its employees' pay checks for costs of legally-required PPE.  These deductions are taken in violation of Indiana's wage statutes, as they violate Indiana's Wage Assignment Statute, I.C. 22-2-6-2, and

1

result in the underpayment of wages in violation of the Indiana Wage Payment Statute, I.C. 22-2-5. Those same illegal deductions violate the Fair Labor Standards Act ("FLSA"), particularly as the deductions cause overtime violations, because Oasis is violating the FLSA's rule that wages (including payment of an overtime wage) must be paid free and clear, unconditionally, and not subject to any kickbacks.

  Additionally, Oasis is and has been underpaying its employees' wages on a class-wide basis as a result of a company-wide policy or scheme in which Oasis fails and refuses to pay employees from their first principal work activity each day until their last principal work activity. This claim applies to Warren and all similarly situated coworkers who were required to don and doff significant PPE, including disposable shirts, pants, boots (shoe covers), face masks, head protection and gloves. All were similarly subjected to Oasis' unlawful compensation scheme that required its PPE-wearing hourly paid production employees to perform significant work prior to the official scheduled start time of each shift and to perform significant work after the employees clocked out at the end of each shift. Oasis has not been paying its employees for this additional work time. Generally, Oasis has been paying its PPE-wearing employees from an officially scheduled shift start time through the time the employees punch out at the end of the shift. Oasis is not paying employees for work time donning significant PPE and walking to work stations after clocking in at the beginning of shifts (employees must be at work stations at scheduled start times wearing full PPE and ready to work). Oasis is also not paying employees for all required work time after punching out on the time clock at the end of the shift, specifically, time necessary to doff the disposable PPE (which is covered in harmful fiberglass material and resin).

  Oasis is not paying its PPE-wearing employees wages or overtime for all of the required

work performed donning and doffing PPE and clothing and walking to work stations.

Warren's class and collective action claims based upon Oasis' illegal wage deductions and its illegal failure to pay for work from the first principal activity (donning) through the last principal work activity (doffing) are perfect for class treatment and will be easy to prove. All of Oasis' illegal wage deductions should be shown on the face of its pay stubs to employees and Oasis' time clock records should permit the parties and the Court to estimate the unpaid donning and doffing time not paid by Oasis.

## I.  FACTUAL ALLEGATIONS

1. Warren is a resident of the State of Indiana, and is domiciled in Plymouth, Marshall County, Indiana.

2. Oasis operates its manufacturing facility in Plymouth, Marshall County, Indiana. Oasis manufactures home bath products, such as shower stalls and bases and combination tubs and showers. The products Oasis manufactures have high resin and fiberglass content and production workers work with raw resin and fiberglass materials.

3. Warren is a former Oasis employee. He was hired in approximately October 2017 to work as an hourly-paid production employee. Warren voluntarily resigned from employment in approximately February or March 2018.

4. Oasis pays or paid Warren and his fellow PPE-wearing employees on an hourly-paid basis. Warren and his fellow PPE-wearing production manufacturing employees are non-exempt for FLSA overtime purposes. During his employment, Oasis paid Warren at hourly rates of pay in the $11.00 to $12.00 per hour range. Warren and his fellow PPE-wearing production employees routinely work some overtime hours (hours in excess of forty) during some workweeks through the year.

### A. Description of Illegal Wage Deduction Claims

5. During his employment, Warren worked for Oasis as a "roller." As a roller, Warren had to work with and around significant harmful substances, including sprayed fiberglass, sprayed resins and paint. Other Oasis job positions that required significant work around fiberglass, resins, paints and other substances included the jobs of "chopper," "painter," and "parts pullers." Warren and all similarly situated Oasis coworkers who worked in areas around the fiberglass, resins, paints and other harmful substances were required by law – particularly OSHA and IOSHA laws – to wear substantial PPE while at work or in the manufacturing area. Warren estimates that Oasis employs 240 or so employees at any given time and Warren estimates that, at least, one half of those employees (at least 120 employees) are required to wear substantial PPE at work to protect from harmful fiberglass, resins, paints and other substances. The types of PPE that law (e.g., OSHA laws and regulations) and Oasis required Warren and his PPE-wearing coworkers to don at work included, but are not limited to, 1) disposable paper shirts, 2) disposable paper pants, 3) disposable paper shoe coverings (booties), 4) disposable paper face masks, 5) safety eye glasses, 6) disposable head coverings, and 7) disposable gloves.

6. By law, particularly OSHA laws and regulations, Oasis is and was required to provide Warren and all of his fellow PPE-wearing employees with all of the required PPE, including all paper, disposable PPE, described in the paragraph above, at Oasis' expense. Oasis cannot pass any of the expense of this legally required PPE to its employees. Indeed, even the Indiana Wage Assignment Statute itself, at I.C. 22-2-6-2(e), contains this express prohibition on charging employees through wage assignments for PPE, stating "Except as provided under 29 CFR Parts 1910, 1915, 1917, 1918, and 1926, an employee shall not be charged or subject to a

wage assignment under subsection (b)(14) or (b)(15) for protective equipment including personal protective equipment identified under 29 CFR Parts 1910, 1915, 1917, 1918, and 1926." All of the PPE described by Warren in Paragraph 5 hereinabove - 1) disposable paper shirts, 2) disposable paper pants, 3) disposable paper shoe coverings (booties), 4) disposable paper face masks, 5) safety eye glasses, 6) disposable head coverings, and 7) disposable gloves – are the same types of PPE which an employer must provide and which it cannot charge (or subject employees to a wage assignment) to employees under I.C. 22-2-6-2(e).  Under the law, Oasis could not take wage deductions for costs of any of this PPE from Warren's wages or any other PPE-wearing employee for any reason.

7. Despite its legal obligation to provide and pay for all PPE Oasis employees were required to wear, Oasis developed a scheme whereby it told employees it would only provide and pay for two sets of the disposable PPE - 1) disposable paper shirts, 2) disposable paper pants, 3) disposable paper shoe coverings (booties), 4) disposable paper face masks, 5) disposable head coverings, and 6) disposable gloves – per work week, and told Warren and fellow employees that the employees would have to purchase, through a wage deduction, all other sets of disposable paper PPE needed to finish the work week.  Oasis went so far as to create an area of its manufacturing facility (a store) where employees would have to purchase additional sets of disposable paper PPE for the week.  Warren and his fellow PPE-wearing coworkers were generally working five shifts per week.  More important, because of the caked layers of fiberglass and resin which built up on the disposable paper PPE each work day, Warren and all similar coworkers would need at least one set of disposable paper PPE for each work shift.  Oasis' scheme caused Warren and fellow coworkers to purchase multiple sets of additional disposable paper PPE each and every work week through wage deductions.  For Warren, he was

purchasing three sets of disposable paper PPE from Oasis every work week and paying for the PPE himself via wage deductions.

8. The additional sets of disposable paper PPE Oasis charged to Warren and all similarly situated PPE-wearing employees were cumulatively expensive. Oasis charged employees for each individual item of disposable paper PPE (e.g, $2.00 for a shirt, $2.00 for a pair of pants). A full set of disposable paper PPE could cost $5.00 or more. Warren and all similarly situated PPE-wearing employees regularly had $15.00 or more deducted from wages each and every work week. Warren is expressly and specifically alleging that Oasis illegally deducted substantial sums from each of his pay checks in each of his work weeks in calendar year 2018.

9. Based upon information and belief, all illegal PPE wage deductions Oasis took from Warren and his coworkers' wages will be shown as deductions on pay stubs issued by Oasis. Pay stubs will show the amount deducted each pay period and should show year to date ("YTD") amounts deducted for the pay year. Pay stubs will show the total amounts deducted from Warren and from all similarly situated employees for PPE for each pay period and each year.

10. Warren is specifically alleging that Oasis has taken illegal deductions in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, and in so doing, Oasis has failed and refused to pay Warren and every other similarly situated PPE-wearing employee his/her wages in full in each and every week Oasis took one of these pay roll deductions for PPE.

11. Warren is also alleging that Oasis has and had no legal authority to dock his wages and the wages of its employees to cover Oasis' own business expenses (and legal obligation to pay and provide PPE under OSHA and other law), nor did Oasis have signed,

written authority from its employees, including Warren, which complies with I.C. 22-2-6-2 and would allow Oasis to dock its employees' wages to cover PPE costs (as described above).

12. Any wage deductions Oasis took from Warren's wages and the wages of his coworkers without wage assignments that fully complied with the requirements of I.C. 22-2-6-2(a) are illegal and created violations of the Indiana Wage Payment Statute, regardless of whether or not the deduction was taken for a reason which would have been permitted under I.C. 22-2-6-2(b). That said, the deductions Oasis took for PPE costs are not authorized under I.C. 22-2-6-2(b). Moreover, as described above, the deductions Oasis took and takes for PPE costs directly violates the prohibition listed in I.C. 22-2-6-2(e).

13. All wage deductions Oasis took from Warren and any other PPE-wearing employee's wages during weeks in which the Plaintiff also worked overtime constitutes and FLSA overtime violation for failure to pay all overtime free and clear and not subject to any kickback. This would include all deductions taken from Warren or any worker's wages for any PPE costs.

14. While discovery will be necessary to determine precise figures, based upon information and belief, Warren estimates that Oasis has illegally deducted and taken from its employees well over $100,000.00 in wages over the last two years' time. With liquidated damages under I.C. 22-2-5-2, Oasis will likely owe damages of $300,000.00 or more for its unlawful deductions for PPE costs.

### B. Description of Unpaid Wage and Overtime Claims Based Upon Oasis' Failure to Pay Wages From Each Employee's First Principal Activity to Each Employee's Last Principal Activity

15. Oasis utilizes a time clock for its hourly paid employees. However, Oasis' time

clock records for Warren and all similarly situated PPE-wearing employees will not accurately record all work Warren and his coworkers performed each work day. Specifically, as described in more detail in the paragraphs below, Oasis was not keeping accurate time records which recorded compensable work activity employees performed at the start of each work shift, nor was Oasis recording compensable work activity which employees performed after punching out on the Oasis time clock at the end of each work shift.

16.     **Unpaid Work At the Beginning of Each Work Shift**. Warren and all PPE-wearing coworkers are required to spend significant time at the beginning of each work shift donning required PPE to protect themselves from harmful fiberglass, resins, paint and other harmful materials. Workers don PPE outside of their assigned Oasis work areas, many in the Oasis locker room, but some don the gear in the parking lot or entry way (the PPE is worn over clothes and shoes). The PPE must be donned, however, before employees are allowed to walk in any manufacturing area or, more importantly, walk to their assigned work stations. For that reason, this PPE donning of 1) disposable paper shirts, 2) disposable paper pants, 3) disposable paper shoe coverings (booties), 4) disposable paper face masks, 5) safety eye glasses, 6) disposable head coverings, and 7) disposable gloves, takes many significant minutes of work. None of this donning time is paid, nor is it recorded on the Oasis time clock. After donning required PPE, employees punch in on the Oasis time clock and then take the minutes necessary to walk to an assigned Oasis work area. Oasis requires each employee to be fully dressed in PPE and at his/her assigned work station, ready to work, at the employee's scheduled work start time. For example, Warren typically worked the second shift and he was required to be in his full PPE and present at his work area at his scheduled 3:00 p.m. shift start time. Oasis set its time clocks so that employees could only punch in for a shift on the time clock at a time that was ten minutes

prior to the scheduled shift start time.  This fact did not matter to employee wages, however, because Oasis would disregard actual time clock punches "in," and would instead begin paying employees only at the official scheduled shift time (in Warren's case, this was 3:00 p.m.).  This means, and Warren expressly asserts and alleges, Oasis was not paying Warren and all similarly situated PPE-wearing coworkers for their compensable work minutes and hours spent in required PPE donning and time walking to work areas after donning PPE and clocking in at the beginning of a shift.  Similarly, Warren and his coworkers would also have to spend significant, compensable work time obtaining PPE from Oasis PPE store/window on most work shifts (this includes obtaining PPE that Oasis would charge to employees through the wage deductions described above).  Warren and his similarly-situated PPE-wearing coworkers were losing ten or more minutes of compensable work time at the beginning of each work shift every day – at least five shifts per week.  Warren estimates that he would arrive to work twenty minutes before his scheduled shift start in order to have time to 1) obtain his PPE, 2) don his PPE, 3) clock in, and 4) walk to his work station to arrive before his scheduled start time.

17. **Unpaid Work At the End of Each Work Shift**.  At the end of each work shift, Warren and all similarly situated PPE-wearing coworkers would leave work stations and walk back to the time clock to punch out.  During this end of shift walk, employees would still have to be dressed in required PPE.  Oasis would treat an employee's time punch out as the end of the employee's paid work day.  However, after punching out, employees would have to spend significant minutes in clean up and doffing all of the required PPE, including all of the disposable paper PPE which would be caked with fiberglass material, resin, paint, etc….  This doffing and cleaning process would take at least five or more minutes after each employee clocked out.  Oasis did not pay wages for these additional minutes.

18. Oasis violated the FLSA's recording keeping obligations, 29 USC 211(c), by failing to accurately record all compensable time worked by Warren and all similarly situated PPE-wearing coworkers from a first principal work activity through a last principal work activity each work shift. As a result of this recordkeeping violation, the Court and the parties will need to rely upon the best available evidence of this off the clock work time that Oasis failed to pay. This is true for unpaid wages and unpaid overtime compensation. Warren conservatively estimates that Oasis failed to pay him and his similarly situated PPE-wearing coworkers by fifteen or more minutes each work shift and by well over one hour each work week. Further, Warren specifically asserts and alleges that he is owed wages for at least one hour of work/overtime work in every full work week (5 or more shifts) he worked for Oasis.

19. Based upon its long-standing practice of failing to treat substantial shift beginning and shift ending work (donning and doffing of required PPE and walking time) as compensable work time, Oasis has been systematically underpaying its employees significant sums of wages and overtime on a daily, weekly and annual basis.

20. As described above, all of the time employees spend donning required PPE is work time. All time spent walking to a work station after donning required PPE is work time. All of this PPE-donning and walking work time must be compensated under the FLSA and the Indiana Wage Payment Statute. Oasis does not and has not paid Warren and all similarly situated employees for any of this work time from the time of each employee's first principal activity (donning PPE) until the time employees doff the PPE, as is required by law.

21. All of Oasis' time keeping, time card rounding/shaving and wage payment schemes were performed to Oasis' advantage and to the detriment and harm of Oasis' employees.

22. Oasis intentionally and knowingly violated its employees' rights to earned wages and overtime through Oasis' conscious and deliberate decision not to pay employees for all work time related to the donning and doffing of PPE and all related work activities which occurred before the official shift scheduled start time and after punching out on the time clock at the end of a shift.

23. During his last months of employment, in 2018, Warren believes he was paid wages at the rate of $12.00 per hour.  His overtime rate of pay was $18.00 per hour.  During each work week in 2018, Oasis underpaid Warren his wages and overtime (for each week the unpaid hours of work would put Warren's work hours in excess of 40) by one or more hour.  This means Oasis underpaid Warren's wages by $12.00 or more per week for each week in 2018.  Under the Indiana Wage Payment Statute, with liquidated damages under I.C. 22-2-5-2, Oasis owes Warren damages of $36.00 or more per week he worked.  Under the FLSA, for the weeks Warren worked overtime hours, Oasis owes $36.00 per week ($18.00/overtime hour doubled to $36.00 under the FLSA's liquidated damages provision).

24. Warren's wage loss is representative and typical of the wages lost by his fellow PPE-wearing coworkers.  In this class and FLSA collective action, Oasis will owe hundreds of thousands of dollars in damages to its employees who were not paid for significant donning and doffing time related to PPE they were required to wear by Oasis and by law.

25. Oasis has intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages through Oasis' illegal wage deduction practices and its illegal treatment of required, work time (donning/doffing of PPE, walking to work stations) as unpaid time.  Oasis intentionally, knowingly, with reckless disregard and systematically violated Warren and all similarly situated employees' rights to be paid earned

wages and to be paid earned overtime compensation. Oasis deliberately and intentionally implemented illegal wage deductions and illegal wage policies in order to pay less in wages and overtime to its employees than it owed.

### III. CLASS AND COLLECTIVE ACTION ALLEGATIONS

26. Warren incorporates herein by reference paragraphs 1 - 25 above.

27. Warren is pursuing claims individually, but this Complaint is brought also as a collective action and as a class action on behalf of other current and former Oasis PPE-wearing employees who were similarly denied payment of wages and overtime compensation under Oasis' compensation scheme that involved unlawful wage deductions and the failure to pay for all work time from the first principal activity each day through the last principal activity.

28. This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Warren and all Oasis PPE-wearing current and former employees who were damaged by Oasis' compensation system which required and resulted in uncompensated work by Oasis' employees. By virtue of the "collective action," Warren represents the identical and/or similar interests of former and current coworkers denied wages and overtime compensation under the same circumstances. Warren anticipates that other Oasis employees and former employees will opt in to the action.

29. With respect to FRCP 23(b)(3) class action claims under the Indiana Wage Payment Statute, Warren will serve as class representative over a proposed class. The class will be as follows:

> Warren will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute. This Court has supplemental jurisdiction over Warren's Indiana statutory wage claims. This action is filed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Warren and on behalf of all eligible PPE-wearing Oasis current and former employees (who voluntarily resigned) who work

or worked for the company and were damaged by Oasis' compensation system which required and resulted in unlawful wage deductions and in uncompensated work performed by hourly-paid employees. By virtue of the class action, Warren represents the identical and/or similar interests of former and current coworkers denied wages under the same circumstances.

30. Based upon information and belief (particularly in light of employee turnover rates), the number of potential class members is believed to be several hundred or more individuals, however, the actual number of Oasis' current and former PPE-wearing employees who will be members of this collective action/class action is so great (numerosity) that joinder of all members is impractical. Instead, Warren will pursue discovery to obtain the names of the other current and former PPE-wearing Oasis employees, to provide notice of the collective action, and to offer the opt in opportunity, and to provide notice of the class action and to offer the opt out opportunity.

31. Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group/class.

32. Warren's claims are typical of the claims of the whole collective group of current and former PPE-wearing, hourly-paid employees harmed by Oasis' illegal wage practices. Warren's claims are typical of the claims of the whole class of current and former PPE-wearing hourly-paid employees harmed by Oasis' illegal wage practices.

33. Warren will act to fairly and adequately protect the interests of the entire collective group of current and former Oasis PPE-wearing employees. Warren will act to fairly and adequately protect the interests of the entire Rule 23 class of current and former PPE-wearing Oasis employees.

34. A "combined"[1] collective action/class action is superior to other available means for the fair and efficient prosecution of these wage claims against Oasis. For example, to prove Oasis' illegal wage practices, Warren and other members of this collective group/class would seek in discovery records about all similarly situated current and former PPE-wearing Oasis employees who were similarly denied earned wages and overtime compensation under Oasis' compensation system which required unlawful wage deductions and also resulted in uncompensated work through illegal wage practices which failed to pay for PPE donning and doffing work time, all of which harmed hourly-paid employees. Individual lawsuits by the members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

35. A determination regarding the "similarness" of those able to participate in the collective action/class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of FLSA and Indiana statutory and contractual wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA and Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

36. A combined collective action/class action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

---

[1] See *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-974 (7th Cir. 2011)

37. Because Oasis' compensation system which required and resulted in illegal wage deductions and uncompensated work by hourly-paid employees results in wage violations that trigger issues of both federal and state law, this cause of action presents the ideal factual scenario supporting the Court's exercise over the supplemental state law claims, as common state and federal law issues predominate.

### IV.  JURISDICTION AND VENUE

38. This Court has jurisdiction over Warren's FLSA claims under 28 USC § 1331 as those FLSA claims raise questions of federal law.  See 29 USC § 201 et seq.  The Court has supplemental jurisdiction over Warren's Indiana law claims, which have a common basis in fact with his own and the other Plaintiff class members' FLSA claims.

39. This Court is the appropriate venue for this cause of action as Warren lives in Plymouth, Marshall County, Indiana, Oasis is headquartered in Plymouth, Marshall County, Indiana, and the Plaintiff Class all performed the work at issue in Plymouth, Marshall County, Indiana, which is part of the Northern District of Indiana.  28 USC § 1391.

### V.  STATEMENT OF CLAIMS

#### A.  Fair Labor Standards Act Claims

40. Warren incorporates herein by reference paragraphs 1 through 39 above.

41. Oasis is an "enterprise," as that term is defined by the FLSA, covered by the overtime and minimum wage provisions of the FLSA.  Oasis is an "employer," as that term is defined by the FLSA.  Oasis is a "person" as that term is defined by the FLSA.

42. Oasis violated Warren's rights and the rights of all members of the Plaintiff Class to be properly paid overtime wages in a manner required by the FLSA.  Oasis has committed overtime violations by failing to pay Warren and his similarly situated coworkers for all overtime

hours of work, particularly as Oasis was taking unlawful deductions (kickbacks) during weeks in which overtime was worked and Oasis underpaid overtime wages based upon its refusal to pay employees from a first principal activity (donning) to a last principal activity (doffing).

43. Oasis has repeatedly violated the FLSA's overtime provisions by not paying Warren and members of the Plaintiff Class for all overtime hours of work and at the required overtime compensation rate for all hours worked over 40 in a work week.

44. Oasis' failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects Oasis to a three year statute of limitations.

45. Warren and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Oasis' violations of their rights under the Fair Labor Standards Act.

### B.  Indiana Wage Payment Statute Claims

46. Warren incorporates herein by reference paragraphs 1 through 45 above.

47. Warren has statutory wage claims arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and he is the named Plaintiff who represents the same or similar interests of all current Oasis' PPE-wearing, hourly-paid employees and all of Oasis' former hourly-paid, PPE-wearing employees who voluntarily resigned from employment.

48. By way of this Claim, Warren is seeking, individually and on behalf of members of the Plaintiff Class of current and former Oasis employees (who voluntarily resigned from employment), all available damages, including all unpaid wages, all underpaid wages, all unlawfully deducted wages, all available liquidated (treble damages), all attorney's fees, costs

and expenses, plus any other damage to which Warren and his fellow Plaintiff Class members may be entitled pursuant to law.  Pursuant to I.C. 22-2-5-2, Warren is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid wages, underpaid wages, illegally deducted wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses.  Warren further expressly asserts and alleges that Oasis acted in bad faith, and certainly was not acting or seeking to comply with the Indiana Wage Payment Statute in "good faith," when it intentionally took illegal wage deductions, and when it created a system that failed to pay employees from a first principal activity through a last principal activity each work day, all of which resulted in underpaid wages on a class-wide basis.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Warren respectfully request that the Court enter judgment against Oasis, and issue all available relief to him and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1. All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2. All unpaid or underpaid wages;

3. All statutory damages under I.C. 22-2-5-2, including, but not limited to, all liquidated damages, costs, attorney's fees and expenses and statutorily authorized damages;

4. All reasonable attorney's fees and expenses;

5. Costs;

6. Prejudgment interest, if available; and

7. Any and all other relief just and proper in the premises.

        Respectfully submitted,

        HASSLER KONDRAS MILLER LLP

        By/s/Robert P. Kondras, Jr.
        Robert P. Kondras, Jr.
        Attorney No. 18038-84
        100 Cherry Street
        Terre Haute, IN 47807
        (812) 232-9691
        Facsimile: (812) 234-2881
        kondras@hkmlawfirm.com

        Robert J. Hunt
        Attorney No. 30686-49
        THE LAW OFFICE OF ROBERT J. HUNT, LLC
        1905 South New Market St. Ste. 220
        Carmel, IN 46032
        Telephone:  (317) 743-0614
        Facsimile:  (317) 743-0615
        E-Mail: rob@indianawagelaw.com